REL:  December 9, 2022

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

### 2200969

_____

**Anjanette Anderson**

**v.**

**William Anderson**

**Appeal from Lauderdale Circuit Court**
**(DR-19-900280)**

MOORE, Judge.

Anjanette Anderson ("the wife") appeals from a judgment entered by the Lauderdale Circuit Court ("the trial court") divorcing her from William Anderson ("the husband").  We affirm the judgment.

2200969

<u>The Judgment</u>

On July 23, 2021, after a trial at which it received ore tenus evidence, the trial court entered a judgment divorcing the parties on the ground of incompatibility of temperament. The judgment, among other things, awards the husband the marital residence, divides the parties' personal property, requires each party to pay his or her individual debts, and denies either party alimony. The judgment further awards the husband sole custody of the parties' two minor children, requires the husband to maintain health-insurance coverage for the benefit of the minor children, and declines to award the husband any child support. On August 18, 2021, the wife filed a postjudgment motion, arguing, among other things, that the trial court had erred in failing to award her periodic alimony, in awarding the husband the marital residence, and in dividing the parties' personal property. The trial court denied the postjudgment motion on August 20, 2021. The wife filed a timely notice of appeal on September 2, 2021.

## The Issues

On appeal, the wife argues that the trial court erred in dividing the marital property and in failing to award her periodic alimony.

## Analysis

Under Ala. Code 1975, § 30-2-51(b)(1), a trial court, when divorcing parties, shall make an equitable division and distribution of the marital property. "Equitable division and distribution involves the 'fair ... allocation' of marital property." Corriveau v. Corriveau, [Ms. 2200425, Nov. 19, 2021] ___ So. 3d ___, ___ (Ala. Civ. App. 2021) (quoting Black's Law Dictionary 679 (11th ed. 2019)). When a trial court receives oral testimony, this court presumes the correctness of the trial court's judgment, and this court may reverse that judgment only when the appellant shows that the trial court abused its broad discretion in dividing the marital property. See Sumerlin v. Sumerlin, 964 So. 2d 47 (Ala. Civ. App. 2007). "A property division that favors one party over another does not necessarily indicate an abuse of discretion by the trial court." Fell v. Fell, 869 So. 2d 486, 496 (Ala. Civ. App. 2003).

2200969

The salient evidence regarding the division of the marital property is as follows. At the time of the trial, the husband was 60 years old and the wife was 54 years old. The parties had been married for over 29 years at the time of their separation on October 1, 2019. The parties had three children, two of whom were minors at the time of the trial. The parties separated in October 2019 following an incident at a local motel. The husband testified that he had found the wife staying at the motel and that, when he entered her motel room, he had found her clad in lingerie. According to the husband, the wife had said that she had been drinking wine with her friends. The wife testified that she had been staying at the motel to protect herself from the husband, who she described as abusive. The husband denied that he had ever physically abused the wife and the wife did not produce any evidence to corroborate her allegations of abuse. The wife also claimed that the parties' minor children had been abusing her and had been forcing her to stay in a locked bedroom in the marital residence, claims that the husband also denied. The husband testified that, to the contrary, the parties' children had left the marital residence in 2014 because of alleged physical abuse by the wife and that the State

4

2200969

Department of Human Resources had twice investigated the wife for allegedly abusing the children.

Before their separation, the parties had lived together with the two minor children in the marital residence in Florence. The parties did not own any other real property. The husband testified that the marital residence had been purchased 31 years ago and that he and the wife had lived together in the marital residence from the time of their marriage in 1990 until the wife moved out in October 2019. According to the husband, the mortgage payments on the note securing the mortgage of the marital residence, which were $620 per month at the time of the trial, were paid from a joint checking account. The wife testified that she had directly deposited her paycheck into that account, but the husband testified that the wife would subsequently withdraw those funds from the account, and, thus, he said, she had not contributed to the payment of the mortgage note. The wife disputed that testimony, but she did not proffer any direct evidence demonstrating any contributions that she had made toward the payment of the mortgage note. The wife also did not testify that she had made or had contributed to any improvements to the marital residence.

5

The husband testified that, at the time of the trial, the marital residence had a fair market value of $108,000 and that $25,000 was still owed on the mortgage note. The wife testified that the mortgage-note balance was $27,000. At one point during the trial, the wife requested half of the equity in the marital residence, but she later testified that "with the equity of the home I'll just give it to the [parties' children]."

During the marriage, the husband worked as a law-enforcement officer and the wife worked as a nurse. The husband testified that he had also owned a profitable car-wash business but that he had sold that business in 2008. When the husband worked overtime, the wife would care for the parties' children. The husband retired in 2018 and, at the time of the trial, was receiving approximately $2,000 a month in Social Security disability benefits. The husband also owns an individual retirement account ("IRA") that, at the time of the trial, had a balance of $552,000. According to the husband, the wife had worked at a local hospital until it closed and, upon its closing, had received a retirement "payout." Neither party specified the amount of the payout, but the husband testified that, at one point, the wife had deposited $15,000 into

her separate bank account, the funds of which, he said, he had not accessed. After the hospital closed, the wife worked as a traveling nurse, earning $60 per hour. The husband testified that, in 2019, when the parties separated, the wife was earning approximately $3,500 every two weeks. The wife stated that she had been unemployed since October 2019 and that she could no longer work as a nurse because, she said, in April 2019 she had suffered a mental breakdown and her nursing license had been revoked by the State Board of Nursing. The wife testified that, since March 2020, she had been living in Louisiana with her fiancé, who, she said, supports her financially and provides her with health-insurance coverage.

The parties had accumulated various automobiles and recreational vehicles over the years, including a boat and several automobiles in salvageable condition. The husband testified that he had purchased all the automobiles and recreational vehicles, but the wife testified that she had contributed to the purchase of a 2004 GMC Yukon Denali automobile. The wife requested that the trial court award her the Yukon Denali and the 2010 Chevrolet Camaro automobile that she regularly

drove. The wife testified that she was not claiming any interest in the recreational vehicle, including the boat or the salvageable automobiles.

The husband testified that, before they separated, the parties had had a joint savings account and a joint checking account. The wife testified that she had directly deposited her paycheck into the joint checking account and that the husband would then give her $200 per week as spending money. Although the checking account was a joint account, the wife claimed that she could not access the account without the husband's permission. The husband, on the other hand, testified that the wife had not contributed to the joint checking account and that he had not limited her spending to $200 per week; instead, the husband said, although the wife's paycheck was deposited into the joint checking account, she would immediately withdraw that money for her own use. He testified further that the wife had withdrawn all the funds in that account when she left the family in October 2019. The husband testified that, in the 10 years preceding their separation, the wife had separated herself financially from the family and had used her wages solely for her own benefit, purchasing designer-brand clothing and accessories. The

husband testified that, since 2008, he had paid most of the family's expenses and all the marital debts out of his salary as a law-enforcement officer, which was $42,000 per year, and from the proceeds he had received from the sale of the car-wash business. The husband testified that the wife took all of her personal property with her when she left in October 2019 and that he had noticed that $6,000 worth of custom fishing rods and fishing reels were also missing.

The husband testified that, after the wife left the family in October 2019, he had cared for the minor children without any financial support from the wife. The husband testified that he pays $800 per month for a health-insurance policy that covers the minor children and himself, that he had purchased a 2011 Chevrolet Malibu automobile for one of the minor children and had been making the payments on that automobile, and that he pays for the minor children's automobile insurance. The wife claimed that the minor children had changed the name on her credit cards without her permission and had made unapproved charges totaling $35,000 on those credit cards. The husband testified that the minor

children had charged only $700 on the wife's credit cards for clothes for school just before the wife left the marital residence in October 2019.

In her brief to this court, the wife asserts that the husband received the entirety of the marital property with the lone exception of her personal automobile. The wife overlooks the evidence indicating that she had separated herself financially from the husband in the 10 years before the parties separated; that she had used her retirement payout solely for her own personal benefit; that, when she left the family, she had taken with her all of her personal property as well as all the funds in the parties' joint checking account, which was estimated by the husband to be between $5,000 and $6,000; that she was relieved of the duty to repay the mortgage note associated with the marital residence, which had a balance of approximately $25,000; and that she was not ordered to pay any child support for the benefit of the parties' minor children. The wife nevertheless argues that she should have received a portion of the equity in the marital residence and a portion of the funds in the husband's IRA.

From the conflicting evidence in the record, the trial court could have determined that the equity in the marital residence was

approximately $80,000 and that the wife had not directly contributed to the payments on the debt for that marital asset, which, it could have determined, were made solely with funds contributed by the husband. See Courtright v. Courtright, 757 So. 2d 453, 456 (Ala. Civ. App. 2000) (requiring a court to consider the source of the marital property when dividing the marital estate). The trial court could also have determined that the wife had disclaimed any interest in the equity in that asset because the wife had testified that, if her award of marital property included any part of the value of the marital residence, she would give that money to the parties' children. Based on those determinations, the trial court could have exercised its discretion to determine that the wife should not be awarded any part of the equity in the marital residence. See Lo Porto v. Lo Porto, 717 So. 2d 418, 421 (Ala. Civ. App. 1998) (quoting Pattillo v. Pattillo, 414 So. 2d 915, 917 (Ala. 1982)) ("The purpose of the division of marital property is to give 'each spouse the value of [his or her] interest in the marriage.'").

When deciding whether to award a spouse an interest in the retirement benefits of the other spouse, a trial court is guided by the same

factors relating to the overall division and distribution of the marital estate. See § 30-2-51(b). The court can consider the source of the retirement benefits; any contributions, financial or otherwise, that the spouse of the retiree made toward the accumulation of those benefits; any debts or liabilities owed by the retiree and the spouse under the divorce judgment or otherwise; the age, health, future prospects, and ability to earn of the retiree and the spouse; the cause of the breakdown of the marriage; and any other factor weighing on the determination of the equities of the case. See Kline v. Kline, [Ms. 2200164, Oct. 8, 2021] ___ So. 3d ___ (Ala. Civ. App. 2021). The term "retirement benefits" includes a party's interest in a retirement account. See § 30-2-51(b)(1).

Based on its consideration of the evidence and its own independent weighing of the evidence, the trial court could have determined that it would be inequitable to award the wife any portion of the husband's IRA. In addition to the evidence indicating that the wife had treated her own retirement payout as her separate property, some evidence in the record, although disputed, indicates that the wife had long separated herself financially from the husband before the trial, and one view of the

12

evidence indicates that the wife had abandoned the family and had assumed a relationship with another man, whom she described as her fiancé. Furthermore, the evidence was undisputed that the husband had retired in 2018 and that his sole source of income was $2,000 per month in Social Security disability benefits. The trial court could have determined that the husband, who was 60 years old at the time of the trial and evidently disabled, would be depending on his IRA and Social Security disability benefits to support himself for the remainder of his life. Although the wife testified that she could not work, the trial court could have disbelieved her testimony and determined that she could earn sufficient funds to support herself. Additionally, the trial court did not award the husband any child support, so his IRA and Social Security disability benefits would also be needed to support the parties' minor children, at least until they reached the age of majority. The wife presented almost no evidence of any nonfinancial contributions to the marriage. At one point, the husband testified that the wife had cared for the parties' children while he was working a great deal of overtime, but the trial court also heard evidence indicating that the husband had been

the sole caretaker of the parties' minor children after the wife separated from the family in October 2019 and that he would continue that role as their sole custodian. Thus, the trial court could have discounted the wife's nonfinancial contributions to the marriage.

The evidence as to the parties' personal property was limited. The husband testified that the wife had withdrawn all the funds in their joint checking account when she left the family in October 2019 and that she had taken a 2010 Chevrolet Camaro automobile, which was awarded to the wife in the divorce judgment. In addition, the husband indicated that the wife had taken all of her other personal property with her and that she might have taken $6,000 worth of his custom fishing rods and fishing reels as well. The specific nature of the personal property that the wife allegedly took is not disclosed in the record, but the husband testified that, over the years, the wife had purchased many luxury items with her own funds, so the trial court could have inferred that the wife had retained those items. The wife specifically testified that she did not want any interest in the salvageable automobiles and boat. The judgment essentially provided that each party would retain the personal property

14

in his or her possession. Given the scant evidence on this point, the record does not indicate that the trial court abused its discretion by dividing the parties' personal property as it did.

Finally, the trial court did not abuse its discretion by denying the wife periodic alimony. In her postjudgment motion, the wife argued to the trial court that it had erred in denying her "alimony" because, she asserted, she was not working, she did not have a sufficient estate to provide for herself, and the parties had been married for more than 29 years at the time of their separation. We infer that by making that argument, the wife was referring to periodic alimony, which is an allowance for future support, as opposed to alimony in gross, which is "a monetary award intended to settle the parties' property rights in the marital estate." Jones v. Jones, [Ms. 2200988, June 30, 2022] ___ So. 3d ___, ___ (Ala. Civ. App. 2022). On appeal, the wife reiterates the arguments she made in her postjudgment motion, citing Ala. Code 1975, § 30-2-57, which governs solely periodic and rehabilitative alimony and not alimony in gross. In her brief, the wife mentions alimony in gross, in passing, but she does not develop any argument that she should have

been awarded alimony in gross, see May v. May, 292 So. 3d 385, 388 (Ala. Civ. App. 2019) (stating that this court will not consider an undeveloped argument as a basis for reversing a judgment), which argument this court could not have considered because any alleged error in failing to award alimony in gross was not first raised in the trial court. See Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala. 1992) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court."). In response to the argument the wife made to the trial court and now makes to this court on appeal -- that she should have been awarded periodic alimony -- the wife testified that, at the time of the trial, she was cohabiting with her fiancé, who, she said, was financially supporting her. Under Ala. Code 1975, § 30-2-55, alimony is not payable when a former spouse is cohabiting with another adult individual in that type of relationship.

For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

2200969

Edwards, Hanson, and Fridy, JJ., concur.

Thompson, P.J., dissents, with opinion.

2200969

THOMPSON, Presiding Judge, dissenting.

The record contains disputed evidence with regard to the marriage of Anjanette Anderson ("the wife") and William Anderson ("the husband"), such as who contributed to the purchase of the marital residence and the parties' level of commitment to the marriage in the last few years preceding the divorce. However, undisputed evidence was presented that the parties had been married for 29 years and that, until the parties separated, the wife had lived in the marital residence and had helped to care for the parties' two minor children. Additionally, undisputed evidence was presented indicating that the wife could no longer work in her chosen profession and that she was dependent on another for financial support and health insurance.

> "[T]he judgment of a trial court following an ore tenus proceeding is presumed to be correct and will not be reversed absent plain and palpable error. Hamby v. Hamby, 575 So. 2d 580 (Ala. Civ. App. 1991). Further, matters involving alimony and property settlement incident to divorce are within the sound discretion of the trial court and will not be disturbed on appeal except where such discretion was palpably abused. Kelley v. Kelley, 579 So. 2d 1362 (Ala. Civ. App. 1991). The issues concerning alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion. Montgomery v. Montgomery, 519 So. 2d 525 (Ala. Civ. App.

18

> 1987). The property division need not be equal, but must be equitable [in light of the evidence], and a determination of what is equitable rests within the broad discretion of the trial court. Daugherty v. Daugherty, 579 So. 2d 1377 (Ala. Civ. App. 1991); Kelley, supra."

Parrish v. Parrish, 617 So. 2d 1036, 1038 (Ala. Civ. App. 1993). It is well established that a property division "that favors one party over the other is not in and of itself an abuse of discretion." See Boykin v. Boykin, 628 So. 2d 949, 952 (Ala. Civ. App. 1993)(citing Jordan v. Jordan, 547 So. 2d 574 (Ala. Civ. App. 1983)). However, a property division that heavily favors one party over another at the end of a lengthy marriage necessitates careful scrutiny of the facts to ensure that the property division is equitable.

After considering the evidence presented, I cannot conclude that the property division in this case is equitable. "The purpose of a property settlement in a divorce action is to give 'each spouse the value of [his or her] interest in the marriage.' Pattillo v. Pattillo, 414 So. 2d 915, 917 (Ala. 1972)." Spuhl v. Spuhl, 120 So. 3d 1071, 1075 (Ala. Civ. App. 2013). In Adams v. Adams, 778 So. 2d 825 (Ala. Civ. App. 2000), the trial court awarded the wife approximately 16% of the value of the marital property

and the husband approximately 84% of the value of the marital property. This court held "that the property award to the wife [was] so disproportionate as to be inequitable" and reversed the judgment. 778 So. 2d at 827.

In this case, after a 29-year marriage, the wife was awarded a 2010 Chevrolet Camaro automobile, her remaining retirement funds, and her personal property, the total value of which constitutes less than 10% of the value of the marital property. The husband was awarded a 2014 Chevrolet Silverado automobile, a 2004 GMC Yukon Denali automobile, the marital residence with equity in the amount of $83,000, his retirement account in the amount of $552,000, and his personal property. In my opinion, the trial court's failure to award the wife any part of the equity in the marital residence or the husband's retirement account -- the two largest assets in the marriage valued at approximately $635,000 -- resulted in an inequitable division of marital property. See Stewart v. Stewart, 62 So. 3d 523, 530 (Ala. Civ. App. 2010)(holding that property division was inequitable when the husband was awarded $46,000 in the marital property and the wife was "essentially awarded nothing"). Like

the wife in <u>Stewart</u>, the wife in this case was "essentially awarded nothing" from a 29-year marriage; therefore, I would reverse the portion of the trial court's judgment addressing property division and alimony and would remand the case to allow the trial court to enter an equitable judgment.[1]

Additionally, I cannot agree with the main opinion that the trial court could infer that the wife disclaimed any interest in the equity in the marital residence from her statement that she would give any funds she received from her interest in the marital residence to the children. Unlike her statement that she did not "want" the salvageable vehicles or the boat, which indicates that she did not claim any interest in those items, the wife's statement about the marital residence indicates that she

---

[1]Although evidence was presented from which the trial court could have concluded that the wife was not entitled to periodic alimony, <u>see</u> § 30-2-55, Ala. Code 1975, evidence was also presented from which the trial court could conclude that the wife qualified for an award of alimony in gross, <u>see</u> § 30-2-57, Ala. Code 1975. Thus, reversal of the alimony award in light of its interrelationship to the property division is proper. See <u>Powell v. Powell</u>, 628 So. 2d 832, 834 (Ala. Civ. App. 1993)(recognizing that "funds paid into a retirement plan are an asset of the husband which may be considered by the court in effecting an equitable property division or an award of alimony in gross").

believes that she does have an interest in that property. I cannot agree that the wife's testimony that she would give the children any funds she received from the equity in the marital residence negates "the value of [her] interest in the marriage." <u>Spuhl</u>, 120 So. 3d at 1075.

For the foregoing reasons, I respectfully dissent.